# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

Kyle L.,[1]

                                        Plaintiff,

        v.                                              3:25-CV-1097
                                                        (AJB/MJK)

Commissioner of Social Security

                                        Defendant.

---

Caitlyn Luciano Esq., for Plaintiff
Geoffrey M. Peters Esq., Special Asst. U.S. Attorney, for Defendant

Mitchell J. Katz, U.S. Magistrate Judge

To the Honorable Anthony J. Brindisi, U.S. District Judge:

## REPORT-RECOMMENDATION

Kyle L. brought this action under the Social Security Act (42

U.S.C. § 405(g)) seeking judicial review of the Social Security

Commissioner's final decision denying her application for benefits. (Dkt.

1.). Kyle L. did not consent to the jurisdiction of a Magistrate Judge.

(Dkt. 5). ). So, the Honorable Anthony J. Brindisi, U.S. District Judge,

referred this matter to the Court for Report and Recommendation. Both

---

[1] This Report-Recommendation will identify the plaintiff using only his chosen first name (plaintiff is a transgender man) and last initial to protect his privacy.

parties filed briefs (Dkts. 12, 15, 16) which the Court treats as motions under Fed. R. Civ. P. 12(c), in accordance with General Order 18.[2]

## I.   PROCEDURAL HISTORY

On January 30, 2023, Kyle L. filed an application for Title XVI supplemental social security income benefits, alleging disability beginning January 28, 2023. (T. 17).[3] The Social Security Administration denied the claim initially on October 31, 2023, and again upon reconsideration on April 3, 2024. (*Id.*). Kyle L. requested a hearing 19 days later. (*Id.*) On November 13, 2024, Administrative Law Judge ("ALJ") Mary Jane Pelton held a hearing. (T. 36-60). At the hearing, then non-attorney, now attorney, Caitlyn Luciano represented Kyle L. (T. 38). Both Kyle L. and the Vocational Expert testified. (T. 40-48; 48-54). On December 19, 2024, ALJ Pelton issued an unfavorable decision. (T. 14-30). The appeals council later denied Kyle L.'s appeal. (T. 1-3).

---

[2]  Kyle L.'s brief seems to cite to the CM/ECF pagination system instead of the Administrative record.

[3] All page references to the Administrative Transcript ("T.") and not the page numbers assigned by the CM/ECF pagination system.

## II.    GENERALLY APPLICABLE LAW

### A. Disability Standards

To be considered disabled, plaintiffs seeking disability insurance or supplemental security income benefits must establish that they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months …" 42 U.S.C. § 1382c(a)(3)(A). In addition, plaintiffs'

> physical or mental impairment or impairments [must be] of s uch severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [they] live[], or whether a specific job vacancy exists for [them], or whether [they] would be hired if [they] applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920, to evaluate disability insurance and supplemental security income disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [they are] not, the [Commissioner] next considers whether the claimant

3

> has a "severe impairment" which significantly limits [their] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [them] disabled without considering vocational factors such as age, education, and work experience … Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [they have] the residual functional capacity to perform [their] past work. Finally, if the claimant is unable to perform [their] past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 20 C.F.R. §§ 404.1520, 416.920. Plaintiffs have the burden of establishing disability at the first four steps. *See Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). If they establish that their impairment prevents them from performing their past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

**B. Scope of Review**

When reviewing a final decision of the Commissioner, courts must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Id.* at 417; *see also Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42

4

U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* Yet this standard is a very deferential standard of review "— even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, reviewing courts consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). But reviewing courts may not substitute their interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Id.*; *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

ALJs need not explicitly analyze every piece of conflicting evidence in the record. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *see also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every

5

conflicting shred of medical testimony[.]"). But ALJs cannot "'pick and choose' evidence in the record that supports [their] conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *see also Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   FACTS

The record includes Kyle L.'s medical and mental health treatment records which the parties are familiar with. The Court will refer to the pertinent records and the hearing testimony in its analysis of the parties' claims as appropriate.

## IV.   THE ALJ'S DECISION

At Step One of the five-step-sequential analysis, ALJ Pelton determined that Kyle L. has "not engaged in substantial gainful activity since January 30, 2023, the application date." (T. 19) (cleaned up).

At Step Two, ALJ Pelton concluded that Kyle. L. has "the following severe impairments: disorder of the spine, obesity, asthma, depressive disorder, anxiety disorder, and post-traumatic stress disorder. (T. 20) (cleaned up). At the same step, ALJ Pelton noted that

Kyle L.'s "thyroid disorder, knee disorder, and essential hypertension" are non-severe impairments. (*Id.*).

At Step Three, ALJ Pelton determined that Kyle L. "does not have an impairment, or combination of impairments, that medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart. P, Appendix. 1." (T. 20) (internal citations omitted).

Next, ALJ Pelton discussed the "paragraph B" criteria. (T. 21-22). "To satisfy the paragraph B criteria," mental impairments "must result in one extreme limitation or two marked limitations in a broad area of functioning." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b) (cleaned up). The four broad areas of mental functioning are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting and managing oneself. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C). Here, ALJ Pelton found that Kyle L. did not meet the "paragraph B" criteria because she determined that Kyle L. had (1) mild limitations in understanding, remembering, or applying information; (2) moderate limitations interacting with others; (3)

moderate limitations maintaining concentration, persistence, or pace; and (4) moderate limitations adapting and managing oneself. (T. 21-22).

ALJ Pelton also considered the "paragraph C" criteria. (T. 22). The "paragraph C" criteria require a documented medical history of the existence of the disorder over a period of at least two years, with evidence of both (a) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder; and (b) marginal adjustment, that is, minimal capacity to adapt to changes in environment or to demands that are not already part of daily life. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(c). Here, ALJ Pelton noted that the "paragraph C" criteria were not met. (*Id.*).

After this, ALJ Pelton determined that Kyle L. had the residual function capacity ("RFC") to perform:

> light work as defined in 20 CFR 416.967(b). The claimant can stand and/or walk for four hours. The claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb stairs or ramps, occasionally balance as defined by the Selected Characteristics of Occupations (SCO), stoop, or crouch. The claimant can never kneel or crawl. The claimant can perform frequent reaching, pushing, and pulling with the bilateral upper extremities. The claimant should avoid concentrated exposure to fumes, odors, dusts, gases, or poor ventilation, and should avoid exposure to hazards, such

as unprotected heights and dangerous moving machinery. The claimant can understand, remember, and carry out simple instructions. The claimant can use judgment to make simple work-related decisions. The claimant should work in a job with occasional changes in the routine work setting. The claimant cannot perform work requiring a specific production rate or perform work which requires hourly quotas. The claimant could have occasional interaction with coworkers and supervisors, and no interaction with the public. The claimant should use a cane for ambulation but retains the ability to carry small objects with his free hand.

(T. 23)

To make this finding, ALJ Pelton considered "the medical opinion(s) and prior administrative medical finding(s)" pursuant to 20 C.F.R. § 416.920c. (*Id.*).

At Step Four, ALJ Pelton reasoned that Kyle L. has no past relevant work, was within the "younger individual age 18-49" category, has "at least a high school education," and "transferability of skills is not an issue." (T. 29).

Finally, at Step Five, ALJ Pelton concluded that "considering" Kyle L.'s "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that" he "can perform." (T. 29). Accordingly, ALJ Pelton

9

determined that Kyle L. is not disabled as defined by the Social Security Act. (T. 30).

## V.    ISSUES IN CONTENTION

On appeal, Kyle L. argues that (1) ALJ Pelton erred at Step Two because she found Kyle L.'s knee issues to be a non-severe impairment; (2) substantial evidence does not support ALJ Pelton's decision to limit him to reduced light work instead of sedentary work; (3) ALJ Pelton did not resolve any conflicts between the VE's testimony and the Dictionary Of Occupational Titles ("DOT"); and (4) ALJ Pelton cherry picked evidence to create a an RFC. (Pl. Br. at pgs. 13-25).[4] The Commissioner challenges every argument. (Def. Br. at pgs. 4-20).

## VI.   DISCUSSION

The Court recommends the District Court reverse and remand ALJ Pelton's decision because substantial evidence does not support a reduced light work RFC. If the District Court rejects this recommendation, the Court alternatively recommends the District Court affirm ALJ Pelton's decision because Kyle L. failed to establish that ALJ Pelton erred: (1) at her Step Two determination; (2) when

---

[4] (Pl. Br.) refers to Plaintiffs Brief, Dkt. 12, and (Def. Br.) refers to Defendants Brief, Dkt. 15.

resolving any conflicts, apparent or non-apparent, between the VE's testimony and the DOT; and (3) as to the mental limitation in the RFC.

### A. Substantial evidence does not support ALJ Pelton's decision to limit Kyle L. to reduced light work instead of sedentary work.

The Court recommends the District Court find that substantial evidence does not support ALJ Pelton's RFC. When reviewing an agency's decision, the reviewing court must determine if substantial evidence supports the ALJ's decision. Here, ALJ Pelton determined that Kyle L. should be limited to some level of reduced light work. But the Court cannot tell how ALJ Pelton came to that decision. In consequence, the Court recommends the District Court reverse and remand ALJ Pelton's decision on this ground.

Point two of Kyle L.'s brief seems to advance five possible arguments. *See* (Pl. Br. at pgs. 15-19). *First*, Kyle L. argues that the ALJ erred by establishing an RFC of light work with restrictions that were more consistent with sedentary work. (Pl. Br. at pg. 16). *Second*, Kyle L. argues that ALJ Pelton narrowed the RFC by adding a cane and limiting him to picking up small objects with his free hand, which establishes an RFC that is too narrow. (Pl. Br. at pg. 17). *Third*, Kyle L.

11

argues that ALJ Pelton erred as to her consistency analysis for Drs. Siddiqui and Maguro. *Fourth*, Kyle L. argues the VE's testimony for light jobs is inapplicable. (Pl. Br. at pg. 18). And *Fifth* Kyle L. argues that even if ALJ Pelton offered proper jobs, the last job is not sufficient because it falls below the threshold of a significant number of jobs. (Pl. Br. at pg. 19). Ultimately, it seems that Kyle L.'s argument is that substantial evidence does not support ALJ Pelton's light-work-with-limitations RFC, while substantial evidence supports sedentary work. Construing the argument as such, the Court agrees.

The Court starts its analysis with the medical opinions.

Dr. Siddiqui opined that Kyle L. can occasionally lift and/or carry 10 pounds, and frequently, lift and/or carry less than 10 pounds. (T. 155). Dr. Siddqui further opined that Kyle L. can stand and/or walk, with normal breaks, for a total of 2 hours, and he can sit, with normal breaks, for more than 6 hours in an 8-hour workday. (T. 155). With this, Dr. Siddiqui opined that Kyle L. should be limited to sedentary work. (T. 157).

Dr. Perrotti, on reconsideration, opined that Kyle L. can occasionally lift and/or carry 20 pounds, and frequently, lift and/or carry

10 pounds. (T. 169). Dr. Perrotti further opined that Kyle L. can stand and/or walk, with normal breaks, for a total of 4 hours, and he can sit, with normal breaks, for more than 6 hours in an 8-hour workday. (T. 169). Like Dr. Siddiqui, Dr. Perrotti limited Kyle L. to sedentary work. (T. 174).

Dr. Magurno opined that Kyle has "marked limitations for lifting, carrying, bending, squatting, and crouching. Moderate to marked [limitations] for walking and standing. [And] [m]ild [limitations] for reaching pulling, and sitting." (T. 1167).

After reviewing these medical source statements and the record as whole, the Court cannot determine how ALJ Pelton crafted a light work RFC. An ALJ's decision must create "an accurate and logical bridge from the evidence to" their "conclusion." *Shanaye S.M. v. Comm'r of Soc. Sec.*, No: 18-CV-0217 (TWD), 2019 WL 1988672, at *4 (N.D.N.Y. May 6, 2019) (cleaned up). Indeed, "ALJs written decisions must be sufficiently detailed so courts can conduct an adequate review of their "findings." *John S. v. Bisignano*, No. 24-CV-334 (BKS/MJK), 2025 WL 2201107, at *6 (N.D.N.Y. June 13, 2025) (cleaned up). "When an ALJ does not connect the record evidence and RFC findings or otherwise explain how

13

the record evidence supported [their] RFC findings, the decision leaves the court with many unanswered questions and does not afford an adequate basis for meaningful judicial review." *Heckman v. Comm'r of Soc. Sec.*, No. 18-CV-6032, 2019 WL 1492868, at *3 (W.D.N.Y. Apr. 4, 2019) (cleaned up).

ALJ Pelton's decision to assign Kyle L. light work, considering the lifting requirement, is not supportable. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Because this is so, Kyle L.'s ability to lift things is important. Dr. Magurno, opined that Kyle L. has a marked limitation on his ability to lift things. (T. 1167). But ALJ Pelton rejected that finding, reasoning, among other things, that "such severe limitations are not consistent with the prior administrative findings of the state agency medical consultants nor are they consistent with the objective medical evidence of record, which shows that there were several occasions where[]" Kyle L. "had full strength in his lower extremities." (T. 28). But there are issues with ALJ Pelton's analysis. How can Kyle L., who needs a cane to ambulate—who *ALJ Pelton* limited to lifting "small things—" lift

something that is 20 pounds? (T. 23); *cf. Jody L. B. v. Comm'r of Soc. Sec.,* No. 5:21-CV-734 (CFH), 2022 WL 1541461, at *9 (N.D.N.Y. May 16, 2022) ("if the plaintiff needs to use a cane for support and balance, that would mean at least one hand is not free to hold other objects and perform the lifting and carrying requirements of light work, which are not minimal.").

True, ALJ Pelton could have reached this conclusion by completely adopting Dr. Perrotti's finding that Kyle L. can lift and/or carry 20 pounds, and frequently, lift and/or carry 10 pounds. (T. 174). But there is no record support for this finding. In fact, there is ample support for the opposite finding. *See, e.g.,* (T. 48) (Kyle L. testified that he can only lift 10 pounds); (T. 155) (finding that Kyle L. can occasionally lift 10 pounds); (T. 332) (Kyle L. noting that he "do[es not] lift at all"); (T. 353) (nothing that Kyle L.'s "limited mobility" makes lifting "difficult if not impossible") (*id.*) (noting that Kyle L. "avoids" among other things "lifting"); (T. 361) (Kyle L. noted that "it's too physically changing and painful to lift"); (T. 842) (medical note which identifies that Kyle L. is "[a]ble to lift (5 to 15) lbs."); (T. 844) (same); (T. 859) (same); (T. 861) (same). In consequence, the Court cannot determine how ALJ Pelton

15

determined that Kyle L. can lift 20 pounds. *Cf. Otts v. Colvin,* 15-CV-6731, 2016 WL 6677192, at *4 (W.D.N.Y. Nov. 11, 2016) (remanding because the ALJ did not explain how the plaintiff "could perform light work despite the fact that [a physician] opined that [the plaintiff] had a moderate to marked restriction for lifting, carrying, pushing and pulling")

The Court also cannot determine how ALJ Pelton found that Kyle L. can perform light work considering the walking requirements. Light work jobs "require[] a good deal of walking or standing." 20 C.F.R. § 404.1567(b). In fact, "the primary difference between sedentary and most light jobs" is the walking and standing requirement. SSR 83-10, 1983 WL 31251 at *5. Here, ALJ Pelton adopted Dr. Perrotti's finding that Kyle L. can stand and/or walk, with normal breaks, for 4 hours. (T. 27-28, 169). ALJ Pelton, coming to this conclusion, reasoned that Dr. Perrotti's "opinion is slightly more persuasive than" Dr. Siddiqui's opinion because "Dr. Perrotti had the opportunity to review a more developed record at reconsideration[.]" (T. 27). But ALJ Pelton never explains why that limitation is more reliable than the consultative exam Dr. Magurno performed. (T. 27) (rejecting marked limitations but

16

not the moderate to marked limitations). That error is fatal. *See, e.g., Beverly Ann K. v. Kijakazi*, No. 22-CV-0028 (AMN), 2023 WL 3004779, at *10 (N.D.N.Y. Mar. 2, 2023) (remanding where "the ALJ failed to explain why he did not credit Dr. Puri's findings that Plaintiff had 'moderate to marked limitations to lifting weights,' despite the fact that he found Dr. Puri's opinion to be 'generally persuasive,' and such findings were particularly relevant to the determination of whether Plaintiff could perform light work.").

To make matters worse, the record supports Dr. Siddiqui's opinion that Kyle L. can only walk and/or sit, with normal breaks, for 2 hours. (T. 155); *see also*  (T. 42) (Kyle L. testified that he cannot stand for more than 10 mins); (T. 55) (Kyle L. testified that "just sitting and standing" is something he "can't do . . . for more than an hour or two at the most"); (T. 155.) (noting "antalgic gait w/ cane"); (*id.*) ("[d]egenerative changes of the medial compartment of the left knee . . . as well as the patellofemoral joint."); (T. 170) ("[claimant] is limited to stand/walk 45 [minutes]/work day") (caps changed); (T. 1165) (finding that Kyle L.'s gait is abnormal, his gait is left antalgic with the cane, and "gait becomes more antalgic and stride length decreases, without the cane);

17

(T. 1166) (noting that Kyle L.'s left knee moves "0 to 80 degrees"); (T. 1209) (noting that Kyle L. can walk "20-30 min cumulatively in a day"); (T. 1214) (noting that Kyle L. can only "walk < 0.5 without" pain"); (T. 1225) ("walking" for Kyle L. "is very difficult"). Put plainly, the Court cannot discern why ALJ Pelton determined that Dr. Perrotti's walking and standing limitation was more appropriate for the RFC, especially when the record does not seem to support such a finding.

All told, the Court finds that substantial evidence does not support the ALJ's assessment of light work. Reviewing the record, the Court finds that the evidence largely weighs in favor of finding that Kyle L. can only perform sedentary work. Yet ALJ Pelton limited Kyle L. to reduced light work and this Court cannot tell why. That is error. *See Booker v. Astrue*, No. 07-CV-646 GLS, 2011 WL 3735808, at *5 (N.D.N.Y. Aug. 24, 2011) ("[t]he crucial factors in an ALJ's decision must be set forth in sufficient detail as to enable meaningful review by the court."). With that, the Court finds that ALJ Pelton's proffered jobs—which require Kyle L. to be able to perform light work with a reduced walk limitation—are inapplicable because of the errors ALJ Pelton made in her analysis. *See Kathleen M. v. Comm'r of Soc. Sec.,*

18

No. 20-CV-1040 (TWD), 2022 WL 92467, at *9 (N.D.N.Y. Jan. 10, 2022) (remanding the ALJ's decision because "[a] flawed evaluation of medical opinion evidence" impacted "the ALJ's assessment of [the] claimant's residual functional capacity"). In short, the Court recommends the District Court reverse the ALJ's decision and remand the case for further proceedings.[5]

### B. ALJ Pelton properly determined that Kyle L.'s knee ailment was not severe, yet the ALJ still considered the knee ailment after Step Two.

The Court recommends the District Court affirm ALJ Pelton's Step Two decision. At Step Two, ALJs err if they make a non-severe determination where there is enough evidence to support a severe determination. If the ALJ commits this error but considers the ailment after Step Two, the error is harmless. Here, ALJ Pelton determined Kyle L.'s knee issues were non-severe at Step Two, but she considered Kyle L.'s knee issues after Step Two. Thus, ALJ Pelton's Step Two decision does not provide a basis for the District Court to reverse and remand ALJ Pelton's decision.

---

[5] The Court also recommends the District Court reject Kyle L.'s fifth argument because ALJ Pelton did not offer the sedentary jobs in her decision. *See* (T. 14 – 30). These jobs were only offered by the ALJ in the hearing. (T.  51).

19

At Step Two of the five-step-sequential analysis, ALJs determine whether claimants have a severe medically determinable physical or mental impairment. *See Petrie v. Astrue,* 412 F. App'x 401, 404 (2d Cir. 2011) (summary order). A "severe impairment" is any "impairment or combination of impairments which significantly limits" a claimants "physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Claimants bear "the burden of presenting evidence [that] establish[es] severity." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citations omitted). Claimants must provide evidence of the impairments impact and "any limitations that it may impose upon the ability to perform basic work functions." *Mark Robert L. v. Comm'r of Soc. Sec.*, 17-CV-0142 (DEP), 2018 WL 4509493 at *6 (N.D.N.Y. Sept. 20, 2018). ALJs should only make non-severe findings when "the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work." *Taylor,* 32 F. Supp. 3d. at 265. "The Step-Two severity standard is *de minimis* and intended only to screen out the very weakest cases." *Brenda H. v. Comm'r of Soc. Sec.*, 20-CV-01025, 2022 WL 125820 at *3 (W.D.N.Y. Jan. 13, 2022) (cleaned up).

20

The District Court should not remand Kyle L.'s case on this ground because even if ALJ Pelton erred at Step Two, the error was harmless. If the ALJ considers the non-severe ailments after Step Two, then the error is harmless. *See, e.g., Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) ("And, in those subsequent steps, the ALJ specifically considered [the plaintiff's] anxiety and panic attacks[,]" which the ALJ considered non-severe. And "[b]ecause these [non-severe] conditions were considered during the subsequent steps, any error was harmless."). Here, ALJ Pelton noted that "exams of [Kyle L.'s] lower extremities" revealed "normal findings on several occasions, including 5/5 hip flexion, knee flexion and extension of ankle plantarflexion, and dorsiflexion, as well as sensation to light touch." (T. 24) citing (T. 1241). Likewise, ALJ Pelton cited a January 2024 medical record that noted that Kyle L. "was sitting comfortably in a chair, was non-distressed, moved all extremities, he had normal reflexes, his Hoffman's test was negative, there was no ankle clonus, his straight leg raise test was negative bilaterally, but he did have an antalgic gait." (T. 24) citing (T. 1359). If that was not enough, ALJ Pelton noted that "even on occasions when there were positive finding for back pain and an antalgic gait,

21

[Kyle L.] was noted to be without an assistive device and able to get on and off [the] exam table without assistance." (T. 24) citing (T. 1241). Altogether, this is enough find that ALJ Pelton considered Kyle L.'s knee issues after Step 2. *See, e.g., Mikus v. Berryhill*, No. 16-CV-284 (DJS), 2017 WL 1319838, at *4 (N.D.N.Y. Apr. 7, 2017) ("[B]ecause ALJ Martin clearly considered the headache disorder later in her opinion, I find that the omission of a discussion regarding Plaintiff's headaches at Step Two was harmless and thus find no reversible error with regard to this aspect of the ALJ's decision."). As a result, the Court does not find this argument requires remand.

## C. ALJ Pelton properly reconciled any apparent or non-apparent conflicts between the VE's testimony and the DOT.

If the District Court disagrees with the above analysis, this Court recommends the District Court affirm ALJ Pelton's decision. ALJs must clarify any conflicts—obvious or non-obvious—between the VE's testimony and the DOT. Here, ALJ Pelton clarified any conflicts by making sure the VE clearly articulated why they offered the jobs they did. As a result, this argument does not provide a ground for remand.

"A VE whose evidence conflicts with the DOT must provide a reasonable explanation to the ALJ for the conflict." *Brault*, 683 F.3d at 446. In turn, "SSR 00-4p requires the Commissioner to obtain a reasonable explanation for any apparent—even if non-obvious—conflict between the DOT and a vocational expert's testimony." *Christopher V. v. Comm'r of Soc. Sec.*, No. 24-CV-01418 (MAD/ML), 2026 WL 678529, at \*8 (N.D.N.Y. Jan. 27, 2026) (cleaned up) (quoting *Lockwood v. Commissioner*, 914 F.3d 87, 92 (2d Cir. 2019)).

ALJ Pelton adequately resolved any apparent or non-obvious conflicts between the DOT and the VE's testimony. During the hearing, ALJ Pelton asked the VE to proffer jobs for an individual who, among other things, has "the same age, education, and work experience as the claimant" they "can perform light work," they "can stand and/or walk for [4] hours in an [8-]hour workday," and they "should use a cane for ambulation but retains the ability to carry small objects." (T. 49-50). In response, the VE offered three jobs: (1) Marking clerk (DOT code 209.587-034), (2) Mail clerk (DOT. 209.687-026), and (3) Routing clerk (DOT code 222.587-03) .(T. 50). ALJ Pelton then asked the VE: "what are you basing your testimony on regarding the four hours standing

23

and/or walking." (T. 51). The VE answered, "these jobs have that sit/stand option and so that's why I am basing – that's why I was giving you those particular jobs." (T. 51). Later, ALJ Pelton asked whether the VE's "testimony" was "consistent with the" DOT. (T. 53). The VE answered "yes, except for the off task and absenteeism because the DOT doesn't address either one of those issues. So I was relying on my work experience and knowledge of how these jobs are performed in order to answer those questions." (T. 53-54). This colloquy is enough for the District Court to find "that the record developed by the ALJ satisfies the *Lockwood* requirements." *Christopher V.*, 2026 WL 678529, at *8 (finding the record sufficiently developed where the ALJ asked the VE if their testimony was consistent with the DOT.).

Kyle L.'s first argument on this score is unpersuasive. In his brief, Kyle L. seems to argue that he cannot perform any of the jobs ALJ Pelton offered because they all require "frequent lifting or carrying," which "requires being on one's feet up to two thirds of a workday." Titles II & Xvi: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983); *see* (Pl. Br. at pg. 20); *see also Douglas v. Saul*, No. 20-CV-0322, 2021 WL 2852962, at

\*13 (S.D.N.Y. July 8, 2021) ("the ALJ's testimony that an individual in either of the three identified jobs could sit or stand at will is inconsistent with the DOT's requirement of lifting up to ten pounds frequently."). Kyle L.'s argument fails. Under the Social Security Rulings, frequently means an "activity or condition exists from 1/3 to 2/3 of the time." *See, e.g.,* Marker (DOT No. 209.587-034), 1991 WL 671802 (1991); Mail Clerk (DOT No. 209.687-026), 1991 WL 671813 (1991); Router (DOT No. 277.587-038), 1991 WL 672123 (1991). So if an individual is capable of performing an activity or if a condition can exist from 1/3 (or 2.67 hours) to 2/3 (or 6 hours) of a day, they are able to perform the activity or allow the condition to exist frequently. Here, ALJ Pelton limited Kyle L. to four hours of walking, which would also limit Kyle L. to four hours of lifting. And because four hours is within the 1/3 (or 2.67 hours) to 2/3 (or 6 hours) range of the day, Kyle L. can perform lifting frequently. Thus, Kyle L. can perform the jobs ALJ Pelton offered in her decision.

Kyle L.'s second argument is also unpersuasive. Kyle L. seems to argue that ALJ Pelton erred by not asking the VE whether the occupational base was eroded. Indeed, he cannot cite a single case

25

which supports that proposition. The only case Kyle L. relies on, *Jody L. B.*, 2022 WL 1541461, cuts against his argument. The *Jody L. B.* court rejected the plaintiff's argument "because the ALJ reviewed the record" found "that [the] plaintiff was capable of light work with the additional restrictions of needing to use a cane" and the "the ALJ asked the VE how these additional limitations would affect [the] plaintiff's ability to work." *Jody L. B.*, 2022 WL 1541461 at \*9. Here, like in *Jody L. B.*, ALJ Pelton determined that a cane is a medical necessity for Kyle L., incorporated that cane use in her hypothetical, and asked the VE what jobs would be available. (T. 49 – 50). The VE responded by proffering the jobs that ALJ Pelton used in her decision. So this Court, and the District Court, can conclude that ALJ Pelton considered the cane at the hearing and in her decision.

* * *

In sum, Kyle L.'s third point is not an independent reason to remand this case. ALJ Pelton adequately resolved any apparent or non-obvious conflicts between the DOT and the VE's testimony, and Kyle L.'s arguments to the contrary are unpersuasive. Thus, if the District

26

Court disagrees with the analysis in Section VI.B., this Court recommends the District Court affirm ALJ Pelton's decision.

## D. Kyle L.'s arguments as to the mental limitations ALJ Pelton crafted are meritless.

The Court recommends the District Court reject Kyle L.'s arguments as to the mental portions of the RFC. Here, ALJ Pelton determined that Kyle L. suffers from moderate limitations as to his ability to interact with others. Thus, the Court recommends the District Court affirm ALJ Pelton's decision on this ground.

There seems to be three possible arguments advanced in the final section of Kyle L.'s brief. *First*, ALJ Pelton did not perform the supportability and consistency analysis at Step Five. *Second*, ALJ Pelton cherry picked evidence when finding that Kyle L. has moderate limitations on his ability to interact with others. And *third*, ALJ Pelton's rejection of Drs. Hartman's and Dr. Maguro's marked limitations is evidence that ALJ Pelton improperly substituted her own view with that of competent medical opinions. None of these arguments withstand scrutiny.

The Court recommends the District Court reject what appears to be Kyle L.'s first argument. There is no legal support for the claim that

27

ALJs must perform the supportability and consistency analysis at Step Five. The District Court can, and should, reject this argument and find that this argument is not a ground to remand the Kyle L.'s case.

Moving to the second argument, the Court analyzes whether ALJ Pelton cherry-picked evidence. The Court does not find so. ALJs "cannot ignore evidence or cherry pick only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence." *April. B. v. Saul*, No. 18-CV-682 (DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019). Here, ALJ Pelton limited Kyle L. to "occasional interaction with coworkers and supervisors, and no interaction with the public." (T. 23). ALJ Pelton, supporting this minimal finding, noted that Kyle L. can meet with providers, was cooperative with his providers, and on several occasions, he was in good spirits. (T. 21-22). In opposition, Kyle L. contends that ALJ Pelton ignored evidence such as he preferred that his medical appointments occur telephonically, he was often anxious or stressed, and he displayed emotional dysregulation. (Pl. Br. at pg. 24) (citing T. 875, 905, 917, 1129).

28

These two positions, while they may seem in conflict, are reconcilable. The Court can glean that ALJ Pelton saw the evidence Kyle L. relied on and concluded that Kyle L. can only withstand the lowest level of human interaction. In fact, Drs. Fernandez and Frances, who reviewed the record, and Dr. Hartman, who consultatively examined Kyle L., all determined that Kyle L. has a moderate limitation on his ability to interact with others. (T. 159, 172, 1160). More to point, "a limitation to unskilled work can adequately account for a claimant's moderate limitations in interacting with others." *Justine G. v. Comm'r of Soc. Sec.*, No. 21-CV-6701S, 2023 WL 2595011, at *4 (W.D.N.Y. Mar. 22, 2023) (cleaned up) (collecting cases). Here, Drs. Fernandez, Frances, and Hartman opined that Kyle L. has moderate limitations. *See Reilly v. Colvin*, No. 13-cv-00785, 2015 WL 6674955, at *3 (W.D.N.Y. Nov. 2, 2015) ("[G]enerally a limitation to only 'occasional' or 'limited' contact with others has been found sufficient to account for moderate limitations in social functioning."). Seeming to account for moderate limitations in social interactions, ALJ Pelton assigned Kyle L. three unskilled jobs, none of which require talking. *See* Marker (DOT No. 209.587-034), 1991 WL 671802 (1991) ("Talking: Not

Present - Activity or condition does not exist); Mail clerk (DOT No. 209.687-026), 1991 WL 671813 (1991) (same); Router (DOT No. 277.587-038), 1991 WL 672123 (1991) (same). These job designations support an inference that ALJ Pelton credited Kyle L.'s limited ability to interact with others, reconciled the evidence, and crafted a mental RFC that the record supports. With that, it becomes clear that Kyle L.'s argument on appeal is not to find that ALJ Pelton cherry-picked evidence. It is a trojan-horse request to reweigh evidence. This Court declines to do so. *See, e.g., Muldowney v. Comm'r of Soc. Sec.*, No. 5:17-CV-0352 (TWD), 2018 WL 2417837, at *5 (N.D.N.Y. May 29, 2018) (declining to reweigh evidence). As a result, this argument is not a ground to remand the Kyle L.'s case.

As to the final argument, the Court finds that ALJ Pelton did not impermissibly substitute her own opinion. ALJ Pelton, in her decision, identified moderate limitations as to regulating emotions. (T. 23). The moderate limitations ALJ Pelton assigned are supported by the record. *See* (T. 159, 172, 1160). In reality, Kyle L. raises this argument to

30

repackage arguments this Court has already addressed. [6] Thus, the District Court should reject this argument.

## VII    CONCLUSION

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the District Court **GRANT** Kyle L.'s motion for judgment on the pleadings (Dkt. 12) because Kyle L. demonstrated that substantial evidence does not support ALJ Pelton's RFC which limited Kyle L. reduced light work as opposed to sedentary, and that the decision of the Commissioner be **REVERSED** and **REMANDED**.

If the District Court disagrees with that recommendation it is **ALTERNATIVELY**

**RECOMMENDED**, that the District Court **DENY** Kyle L.'s motion for judgment on the pleadings (Dkt. 12) because Kyle L. failed to show ALJ Pelton erred at Step Two argument; and it is further

**RECOMMENDED**, that the District Court **DENY** Kyle L.'s motion for judgment on the pleadings (Dkt. 12) because Kyle L. failed to

---

[6] The Court finds it unnecessary to address this argument because the Court addressed ALJ Pelton's rejecting Dr. Magurno's marked limitations in Section VI.A., and it addressed ALJ Pelton's findings of moderate limitations in Section VI.D.

show ALJ Pelton did not clarify any conflicts between the VE's testimony and the DOT; and it is further

**RECOMMENDED**, that the District Court **DENY** Kyle L.'s motion for judgment on the pleadings (Dkt. 12) because Kyle L. failed to show ALJ Pelton erred when crafting the mental portion of the RFC; and it is

**ORDERED**, that the Clerk of Court amend the case caption to reflect Kyle L.'s chosen name.

In accordance with 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: May 11th, 2026

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge